## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN ANDERSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 3:19 -CV-00488 -MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ET AL, | ) |
| | ) |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on two motions for summary judgment filed by

Defendants Glenn Slane, Joe Loera, Jon Fatheree, Lana Nalewajka, Michelle Dulle, Ira

Jack, Anissa Shaw, Trevor Chitwood, and Aaron Toennies (Docs. 89, 90) and Defendants

Wexford Health Sources, Inc., Venerio Santos, and Dan Zec[1]  (Docs. 91, 92). Plaintiff filed

one response to both motions for summary judgment (Doc. 98). For the reasons set forth

below, the motions are GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 9, 2019

for deprivations of his constitutional rights at Centralia Correctional Center ("Centralia")

(Doc. 1, 11). Plaintiff claims that prison officials, medical staff, and Wexford Health

---

[1] Defendant Dan Zec retained counsel on or around March 16, 2020 (Doc. 99). Soon after, Defendant Zec's counsel field a motion for joinder to join Defendants Santos and Wexford's motion for summary judgment (Doc. 102). The Court granted Defendant Zec's motion to join Defendants Santos and Wexford's motion for summary judgment (Doc. 107).

Sources, Inc. ("Wexford") exhibited deliberate indifference to his broken hand by delaying surgery for a compound fracture and regularly cuffing him behind his back (Doc. 11, p. 1). After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on two separate counts against Defendants:

> **Count 1:** Eighth Amendment excessive force claim against Defendants Slane, Loera, Jack, Toennies, and John Doe[2] for repeatedly rear-cuffing Plaintiff while he suffered from a broken hand from August 22, 2018 until October 18, 2018.

> **Count 2:** Eighth Amendment deliberate indifference claim against Defendants Wexford, Santos, Zec, Nalewajka, Shaw, Dulle, Slane, Loera, Jack, Toennies, and Sergeant John Doe[3] for unnecessarily delaying Plaintiff's medical treatment for a broken hand or causing additional pain/injury while he awaited treatment for the injury from August 22, 2018 until October 18, 2018 (Doc. 11).

Defendants Chitwood, Dulle,, Fatheree, Jack, Loera, Nalewajka, Shaw, Slane and Toennies filed their motion for summary judgment on February 19, 2020, arguing that Plaintiff failed to exhaust administrative remedies before filing this action (Docs. 89, 90). Defendants Santos and Wexford filed their motion for summary judgment, arguing similarly, on February 21, 2020 (Docs. 91, 92). Plaintiff filed a joint response to both motions for summary judgment on March 13, 2020 (Doc. 98). Defendant Zec was granted leave to join Wexford's motion for summary judgment on March 18, 2020 (Doc. 102).

---

[2] Defendant Warden Jon Fatheree was added as a Defendant, in his official capacity only, in order to respond to discovery aimed at Sergeant John Doe (*See* Doc. 11).

[3] Sergeant John Doe was later identified as Trevor Chitwood (*See* Doc. 85).

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on July 27, 2020 (Doc. 113). Plaintiff was the only witness who testified at the hearing.

LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). After hearing evidence, findings facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey*, 544 F.3d at 742).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a). If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a)**.** Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809**.**

## FACTUAL BACKGROUND

Plaintiff is an inmate with the Illinois Department of Corrections. Currently, he is incarcerated at Western Illinois Correctional Center ("Western Illinois"), but at the time of the allegations in his complaint, he was incarcerated at Centralia (Doc. 90, p. 1).

The complaint alleges, and Plaintiff testified at the *Pavey* hearing, that on August 22, 2018, Plaintiff was involved in an altercation with another inmate (Doc. 11, p. 2).

Plaintiff claims he was taken to the Centralia health care unit ("HCU") where an X-ray confirmed his left hand was broken. *Id.* Plaintiff was placed in segregation the same day. *Id.* While in segregation and awaiting surgery, Plaintiff alleges he was repeatedly handcuffed behind his back, in what is called "rear-cuffing," by Defendants Slane, Loera, Jack, Toennies, and Chitwood, despite being told about Plaintiff's injury (Doc. 11, p. 2). While in segregation, Plaintiff contends that Defendants Shaw and Dulle ignored Plaintiff's requests for medical attention while they conducted their medical rounds (Doc. 11, p. 2). Plaintiff alleges that Defendants Santos, Nalewajka, Wexford, and Zec delayed the process for his surgery and that Defendant Santos ignored his request for a front-cuff permit (Doc. 11, p. 2).

Plaintiff received a disciplinary ticket on August 27, 2018 related to the fight. He was found guilty and punished with one-year C Grade; six-months segregation; revoked GCC or SGT for one year; and a disciplinary transfer (Doc. 90-1, p. 7-10). At some point between August 27 and August 31, 2018, Plaintiff alleges Dr. Santos completed a medical special services referral and report for Plaintiff about his broken hand and marked it as "urgent" (Doc. 98, p. 33).

At the hearing, Plaintiff was questioned about his knowledge of the official grievance procedure and he testified that he believed he should either fill out a grievance form or write to Centralia's warden to file a grievance. So, after his injury, Plaintiff testified that he wrote official grievances, sent letters to various prison officials (including the warden), and submitted requests slips about his medical treatment, broken hand, the

delay in his surgery, and the issue of "rear-cuffing" over the course of his time in segregation, from the date of the altercation to some time in October or November.

Plaintiff submitted two grievances in September related to his punishment from the August altercation that are in the record. Plaintiff submitted the first on September 14, 2018, where he argues that he was simply protecting himself in the fight and would like for his punishment to be reconsidered because he was acting in self-defense (Doc. 90-1, pp. 5–12). He submitted another grievance (#18-9-43) dated September 16, 2018, where he detailed that he would like for his punishment from the altercation to be reconsidered since, he argues, he was attacked and was simply trying to protect himself (Doc. 90-1, pp. 1–4). Both grievances were received on the same day because they are both stamped "received" by Centralia Correctional Center Clinical Services on September 18, 2018 (*see* Doc. 90-1, pp. 3, 5). The grievance officer reviewed the September 16th grievance only and recommended denying it (*Id.* at p. 2). The warden concurred and denied the grievance on September 22nd (*Id.*; *see also* Doc. 92-2, p. 4). Both the September 14th and September 16th grievances were sent to the ARB, even though the warden had only responded to the latter (*see* Doc. 90-1, pp. 2–3, 5). Both grievances were stamped "received" by the ARB on October 2, 2018 (*Id.*). The ARB denied the appeal, noting that Plaintiff's punishment had been reduced (*Id.* at p. 1).

There appears to be only one official grievance in the record related to Plaintiff's injuries from the August fight and related to Plaintiff's two claims against Defendants.[4]

---

[4] Plaintiff testified that he attempted to contact officials through a variety of other formats, including letters. On or around September 18, 2018, Plaintiff wrote a letter to Warden Fatheree explaining that he was

Plaintiff filed a second grievance on September 16, 2018, in which Plaintiff describes how he was put into segregation the same day as the fight. Plaintiff writes that he received an X-ray, which showed he had to see a specialist, which he did on or around August 25, 2018 (Doc. 90-2). The specialist determined he needed surgery (*Id.*) The surgery was scheduled for September 10, 2018, but was then cancelled (*Id.*). As of the date of the grievance, Plaintiff details that he still had not had the surgery and he, therefore, believed he was being neglected (*Id.*).

The counselor received the grievance on September 20, 2018, four days after it was written (Doc. 90-2, p. 2; *see also* Doc. 92-2, p. 4). The cumulative counseling summary indicates that the counselor forwarded the grievance to the healthcare unit for a response (Doc. 92-2, p. 4). The counselor responded on October 1, 2018, stating "I have received your concern and your record. We are aware with the delay in treatment and have been working diligently toward resolution. Appointments are made for further evaluation and treatment." (Doc. 90-2, p. 2; Doc. 98, p. 38; *see also* Doc. 92-2, p. 4)

A note in the cumulative counseling summary, dated October 2, 2018, indicates that the counselor received a second grievance from Plaintiff about his medical treatment, but it was returned because staff determined it was duplicative of the grievance dated

---

experiencing severe pain from his broken hand, that there is a bone "popping out of skin," that he doesn't know when his surgery will be scheduled, and that he needs the Warden to help him (Doc. 98, p. 11). This letter is stamped as "received" the same day. (*Id.*) Additionally, this letter was signed by Defendant Nalewajka and dated September 26, 2018 (*Id.*). She wrote, "See grievance response." (*Id.*). There is another letter, also signed by Defendant Nalewajka, where Plaintiff inquires about the delay in his surgery. Defendant Nalewajka writes, on September 27, 2018, "Going for evaluation today. Responded to all requests" (Doc. 98, p. 13).

September 16th, which the counselor had just responded to the day before (Doc. 92-2, p. 4). This grievance is not in the record as it was apparently lost. When questioned, Plaintiff testified that this grievance included updated information about his delayed medical care and broken hand. Plaintiff testified that he included information about the staff working in the segregation unit rear-cuffing him in an aggressive fashion while his hand was still broken. Plaintiff explained that he asked the segregation correctional officers for their names, but they would not give them to him, so he included "staff" in the grievance. Lastly, Plaintiff testified that this grievance included information about the delay in his surgery and that he included information to identify Defendant Santos in this grievance.[5]

On January 29, 2019, Plaintiff sent the ARB a letter along with the second grievance dated September 16th regarding medical care (Doc. 90-2, p. 3). In the letter, Plaintiff wrote that he was transferred to Western Illinois three weeks prior, and at the time of his transfer, he had received only the counselor's response to his September 16th grievance regarding medical care and no responses from the grievance officer or the warden (Doc. 90-2, p. 3). Plaintiff also wrote that he filed another grievance about the same situation with updated information about his hand being handcuffed behind his back and a denial of a front cuffing permit because of his broken hand, but he never received a counselor, grievance officer, or Warden response (*Id.*). Plaintiff testified that this second grievance mentioned in the letter is the grievance that is missing from the record.

---

[5] Plaintiff also includes a grievance slip in the record, dated at the beginning of October 2018, in which he requests Dr. Santos to recommend front-cuffing because of his broken hand, but Dr. Santos denied that request (Doc. 98, p. 14).

The letter from Plaintiff and the grievance were stamped by the ARB "received" on February 4, 2019 (Doc. 90-2, pp. 2, 3). On February 8, 2019, the ARB responded by returning the grievance to Plaintiff without considering it because it was "not submitted in the timeframe outlined in the Department Rule 504; therefore, this issue will not be addressed further" (*Id.* at p. 1). The response further explained the grievance was "forwarded to the ARB without Grievance Officer's response over 10 day after counselor's response" (*Id.*).

Plaintiff details that he submitted his grievances by placing them in his door while in segregation at Centralia (Doc. 98, p. 4). At the time of his injury, Plaintiff testified he was unaware of the proper grievance procedure, so he submitted a combination of official grievance forms, request slips, and letters, all submitted through his door in segregation. These letters and request slips were sent to various staff members at Centralia, including the Warden and officials in the healthcare unit. When asked how some of his grievances made it to the ARB and some did not, Plaintiff explained that he did not understand the process or why the ARB received some, but not all, of his grievances. He explained that he always put his letters, request slips, and grievances in the door of his segregation cell to officially file them.

Plaintiff further testified that he was transferred to Western Illinois before he received responses to the missing September 16, 2018 grievance as well as some of his letters and requests slips. When he reached Western Illinois, he was instructed by another inmate to write the ARB about the missing grievance and non-responses. Before speaking

with this other inmate, Plaintiff testified that he thought he would get a response to his

grievances and so he waited for such a response since he was unsure what else to do.

**DISCUSSION**

The Seventh Circuit has made clear that normally, the Court does not resolve

factual disputes at the summary judgment stage. *See, e.g. Roberts,* 745 F.3d at 234. But

when there is a motion for summary judgment as to the issue of exhaustion and a factual

dispute remains, that is exactly what the Court must do: weigh the evidence and resolve

the dispute. *Wilborn,* 881 F.3d at 1004. Here, based on the evidence presented in the briefs

and at the hearing, the Court finds that Defendants Wexford, Santos, Slane, Loera,

Fatheree, Nalejwaka, Dulle, Jack, Shaw, Chitwood, and Toennies have failed to carry their

burden of proof on the affirmative defense of exhaustion and, therefore, summary

judgment as to those Defendants should be denied. Defendant Zec, on the other hand,

has met that burden and should be dismissed. It is critical to keep in mind Seventh Circuit

precedent establishing the exhaustion requirement is an affirmative defense, which the

*defendants bear the burden of proving. Pavey*, 663 F.3d at 903 (citations omitted).

Defendants Wexford, Santos, and Zec argue, essentially, that Plaintiff did not fully

exhaust his administrative remedies because he failed to have the grievance officer or

chief administrative officer sign the applicable grievances before filing his appeal with

the ARB (Doc. 92, p. 8). They argue that any duplicate grievances, which presumably

includes the missing grievance, do not have merit per the administrative code (*Id*. at 8-9).

Defendants Slane, Loera, Fatheree, Nalewajka, Dulle, Jack, Shaw, Chitwood, and

Page 11 of 17

Toennies argue similarly that Plaintiff has not exhausted his administrative remedies because he does not name or further identify Defendants in his grievances (Doc. 90, p. 5).

Plaintiff testified at the *Pavey* hearing that he was, in essence, thwarted from exhausting his administrative remedies. *See Dole*, 438 F.3d at 809 ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). At the hearing, Plaintiff's testimony was presumptively credible. He was composed, candid, and logical. Moreover, his explanations were consistent and supported by documents in the record. This is especially true insofar as it relates to the missing grievance that he testified about and the record (i.e. the cumulative counseling summary) confirms that there is, indeed, a grievance that is unaccounted for to date. There were no apparent internal inconsistencies in his story, nor was his story inherently implausible. Ultimately, Defendants failed to poke any holes in Plaintiff's testimony or provide any cogent explanation as to what Plaintiff could have realistically done to further exhaust his administrative remedies.

## I.     The Missing Grievance

Plaintiff presented evidence which cast doubt on the reliability of Centralia's record keeping. Specifically, Plaintiff repeatedly testified that there is a key missing grievance from the record in which he details that both medical unit and segregation staff were aware of his severe injury and did not do anything to speed up his surgery or give him additional comfort from the pain, which describe the two claims at issue in this

matter. This grievance is specifically identified in the cumulative counseling summary. But Defendants could not produce that missing grievance, which casts doubt on the reliability of their record keeping in this instance.

At the hearing and in his response to the motions for summary judgment (*see* Doc. 98, p. 8), Plaintiff argued his situation is similar to that of the plaintiff's in *Dole,* which the Court finds persuasive. Like the present matter, the *Dole* plaintiff followed the grievance procedures, but his grievance went missing. The Seventh Circuit held that the plaintiff had exhausted his administrative remedies "[b]ecause [he] took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled." *Id.* at 813. *See also Woods v. Schmeltz, et al.,* No. 13-cv-1477, 2014 WL 3490569 (C.D. Ill. 2014).[6] Defendants dispute that this missing grievance contained the information that Plaintiff said it did. However, Defendants admit that the grievance is missing and they cannot produce it. As the Court has no way to determine the contents of that grievance, like in *Dole* and *Woods,* the Court must rely on Plaintiff's testimony, which was consistent and clear. The Court is, therefore, satisfied that Plaintiff has exhausted his administrative remedies for purposes of Defendants' summary judgment motions.

**II.      Failure to Name Defendants in a Grievance**

Both in the briefing and at hearing, Defendants emphasize that Plaintiff did not include specific names in his grievances and, therefore, has not exhausted his

---

[6] In *Woods,* the Central District of Illinois held similarly. The plaintiff's grievance went missing and the Court held that this created a material dispute of fact that precluded summary judgment.

administrative remedies. Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")

Although the Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c), the relevant grievances are on forms that ask for a "Brief Summary of Grievance" (Doc. 92-1, pp. 4, 20, 22)). There is no indication on these forms that the inmate has to provide names   (*see id.*).[7]  In this circumstance, the Seventh Circuit

---

[7] Also included in the record are grievances Plaintiff filed that are unrelated to the issues in the present matter. Some of these grievance forms appear to be updated, where inmates are instructed to provide more specific information. These grievances state, "Summary of Grievance (provide information including a description of what happened, when, and where it happened, and the *name or identifying information of each*

has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies so long as the grievances still gave prison administrators a fair opportunity to address the prisoner's complaints. *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011). *Accord Jackson v. Shepherd*, 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013). Plaintiff's September 16 grievance, which was on the form that asks only for a summary of the grievance, includes information about his hand and medical care. Additionally, Plaintiff testified that the missing grievance included updated information about the rear-cuffing issue and his delayed medical care. From the record and testimony, the Court finds that prison officials could determine the parties involved and were appropriately put on notice as to Plaintiff's claims before he filed his lawsuit.

Furthermore, Plaintiff testified that did not have the information necessary at the time he was filing his grievances to name Defendants. When questioned directly about why he did not include specific names in the relevant grievance, Plaintiff explained that he asked the staff in segregation for their names, but they did not provide that information to Plaintiff. Defendants also did not cite to any precedent indicating that a prisoner's failure to include information or names in a grievance that were *unknown to him at the time* could later be held against him and construed as a failure to exhaust his administrative remedies (*see* Doc. 90, 92).   Simply put, Plaintiff did the best he could to

---

person involved" (*See*, e.g., Doc. 92-1, p. 31) (emphasis added). It appears as if Centralia uses both sets of forms.

grieve the situation as it unfolded based on what he knew *at the time*. He articulated the facts the prison could reasonably expect from a prisoner in his position.

### III.   Defendant Zec's Motion for Summary Judgment

Generally speaking, Plaintiff's two claims focus on two issues: (1) his medical care and the delayed surgery after sustaining a serious hand injury; and (2) his treatment in segregation by the segregation unit staff when they continued to rear-cuff his hands even after his injury. Plaintiff's claims relate to two main groups of prison officials: medical staff and segregation staff. Grievances are intended to give prison officials notice of a problem and the chance to correct it before they are subjected to a lawsuit. The Court finds, even when viewing the evidence in the light most favorable to Plaintiff, there is nothing in the record to indicate that Plaintiff exhausted administrative remedies as to Defendant Zec and his role at Centralia.

Unlike the other Defendants in the case, who are either part of the medical staff or the staff in the segregation unit, Defendant Zec is an employee of AdminPros U.S., LLC, a company Wexford contracts with to process and submit Medicaid applications for IDOC inmates (Doc. 60, p. 1). Plaintiff testified that he did not include Defendant Zec's name in the missing grievance and only mentioned medical unit and segregation staff in that grievance. Simply put, there is nothing in the record or that the Court gathered from Plaintiff's testimony to show that Plaintiff exhausted a claim against Defendant Zec or was thwarted from doing so.

CONCLUSION

For the above-stated reasons, Defendants Chitwood, Dulle, Fatheree, Jack, Loera, Nalewajka, Shaw, Toennies, and Slane's motion for summary judgment for failure to exhaust administrative remedies is **DENIED** (Docs. 89, 90). Defendants Wexford, Santos, and Zec's motion for summary judgment for failure to exhaust administrative remedies is **GRANTED in part** as to Defendant Zec and **DENIED in part** as to Defendants Wexford and Santos (Docs. 91, 92). Defendant Zec is **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

This matter shall proceed on Plaintiff's two claims against the remaining Defendants. The stay on merits-based discovery (*see* Doc. 58) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED:   July 30, 2020**

s/    Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**