IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19 -CV-00488 -MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ET AL., | ) |
| | ) |
| Defendants. | |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Currently pending before the Court is Defendants' motion for reconsideration regarding the Court's Order on their motion for summary judgment (Doc. 119).[1] Defendants ask the Court to reconsider its previous decision denying summary judgment on the issue of exhaustion because Defendants contend that one of their arguments "was not addressed by the Court, and it is unclear whether it was considered" proving that Plaintiff did not exhaust any of his grievances prior to filing this lawsuit (Doc. 119, pp. 1, 4). Defendants' motion is denied because the Court remains convinced that its analysis thoroughly outlined in its previous Order is correct.

The Court has inherent power to reconsider interlocutory orders at any time prior to the entry of final judgment. *E.g., Marconi Wireless T. Co. of Am. v. United States*, 320 U.S.

---

[1] Defendants Glenn Slane, Joe Loera, Jon Fatheree, Lana Nalewajka, Michelle Dulle, Ira Jack, Anissa Shaw, Trevor Chitwood, and Aaron Toennies filed this motion for reconsideration on August 13, 2020. Defendants Venerio Santos and Wexford Health Sources, Inc. filed a motion for joinder the same day (Doc. 120), which the Court granted (Doc. 124). As such, this motion for reconsideration is filed by all remaining Defendants.

1, 47–48 (1943); *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018); FED. R. CIV. P. 54(b). That being said, the Court's prior rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002) (citing *Rhone–Poulenc, Inc. v. Int'l Ins. Co.*, 877 F.Supp. 1170, 1173–74 (N.D. Ill. 1995)). Reconsideration of an interlocutory order is only appropriate when a court has misunderstood a party, made a decision outside the adversarial issues presented to the court by the parties, made an error not of reasoning but of apprehension, or where a significant change in the law or the facts has occurred since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). *See also Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 795 (7th Cir. 2018) ("[M]otions to reconsider exist to spare parties and courts unnecessary appeals.") "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

In the Court's Order on Defendants' motion for summary judgment, the Court determined that Plaintiff had exhausted his administrative remedies for all but one of the Defendants (Doc. 115). The Court's reasoning was based on the record as a whole, including compelling testimony about a missing-from-the-record grievance; IDOC's use of outdated grievance forms; and Plaintiff's overall testimony, which the Court found to be convincing, consistent, and credible in his description of his efforts to inform prison officials of his injuries and delayed medical treatment (Doc. 115). In their motion to reconsider, Defendants seem to take umbrage with the Court's characterization of the missing-from-the-record grievance and question whether Defendants' arguments

regarding this grievance were even considered by the Court while making its determination (Doc. 119, p. 4). The Court assures Defendants that it did, in fact, consider all of the relevant information regarding this missing-from-the-record grievance and all of Defendants arguments.

At the *Pavey* hearing, Plaintiff testified there is a key missing grievance from the record in which he details that both medical unit staff and segregation staff were aware of his severe injury and did not do anything to speed up his surgery or give him additional comfort from the pain, which describe the two claims at issue in this matter (Doc. 115, p. 12-13). Plaintiff supported his testimony by referencing a letter he wrote to the Administrative Review Board ("ARB") on January 29, 2019, following up on the missing grievance (Doc. 90-2, p. 3). At the hearing, when asked directly where this grievance was, Defendants' counsel conceded it was not in the record. Put simply, the Defendants, who bear the burden of proof on their affirmative defense of exhaustion, could not produce this grievance or supporting material to describe its contents or whereabouts, and this critical piece of missing information cast doubt on their arguments, particularly when viewing the record as a whole (Doc. 115, p. 13). Plaintiff testified that he was unsure of the appropriate grievance procedure and attempted to contact as many people as possible about his ongoing issues, including through formal grievances and less formal avenues (Doc. 115, p. 10). Additionally, Plaintiff testified he was in segregation for a significant portion of time after his injury before being transferred to another facility (Doc. 115, p. 10). For each of his grievances, request slips, and letters, he put them in the door of his segregation cell to officially file them (Doc. 115, p. 10). If some

made it to the appropriate entities and some did not, Plaintiff testified it was out of his control. As the purpose of a grievance is to give prison officials notice of a problem and the chance to correct it before they are subjected to a lawsuit, the Court determined Plaintiff had met that burden through his series of formal and informal grievances and letters (Doc. 115, p. 14, citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

In their motion to reconsider, Defendants agree with Plaintiff that his counselor received a grievance from Plaintiff regarding medical treatment on October 2, 2018, which his counselor determined was a duplicate of a previous grievance (Doc. 119, p. 2). As proof that this second grievance was a duplicate, Defendants cite to Plaintiff's Cumulative Counseling Summary and Counselor Rollins' note, which simply states, "Received and returned grivacne[sic] regarding medical treatment (broken hand). This is a duplicate grievance" (Doc. 92-2, p. 4). Defendants further argue that this duplicate grievance does not speak about the issues in this case, but they do not cite to any part of the record that supports that assertion (Doc. 119, p. 2).

Defendants then travel down two separate roads of argument. First, Defendants argue (for the first time) that per the IDOC policy at the time, a grievance was not copied and included in a prisoner's master file until it received a second level review by the grievance officer, which explains why the missing-from-the-record grievance was not submitted through IDOC documents (Doc. 119, p. 2). Defendants argue that Plaintiff received the only copy of the duplicate grievance since it was recorded as returned to him (Doc. 92-2, p.4). If Plaintiff had attempted to appeal this duplicate grievance, it would have been immediately sent back to him with a statement that it would not be reviewed

as it is a duplicate (Doc. 119, p. 3). Therefore, even when viewing the facts in the light most favorable to the nonmoving party, Defendants argue that this train of logic proves Plaintiff did not exhaust his administrative remedies.

Defendants then argue that assuming *arguendo* that this duplicate grievance is, in fact, the missing grievance, the January 29, 2019 letter (where Plaintiff speaks of this duplicate grievance) proves yet again that Plaintiff did not attempt to appeal the duplicate grievances because he admits that he never received a counselor's response (Doc. 92-2, p. 3). If he did not receive a response, then he did not appropriately appeal and without an appeal, Defendants argue the Court cannot find that Plaintiff exhausted his administrative remedies (Doc. 119, p. 3).

Defendants have engaged in tunnel vision in both of their arguments, as it is Defendants who are now not addressing the Court's reasoning as a whole for its finding that Plaintiff exhausted his administrative remedies. Defendants' arguments are based on a series of assumptions—that the duplicate grievance was a true duplicate with no additional information, that it did make it back to Plaintiff through the prison mail system, and that he chose to not file an appeal or further pursue that grievance. Plaintiff argues this second grievance was not a duplicate, that it contained new information, and that he never got it back, which he detailed in his testimony and in the letter he submitted to the Warden on January 29, 2019 (Doc. 90-2, p. 3).[2] The record shows that Plaintiff

---

[2] Plaintiff writes, "Also, I filed another grievance about the same situation, but with updated information (pain being handcuffed behind my back and the denial of a front cuff permit despite a broken hand) and never received a counselor's response, nor a response from the grievance officer or Warden." It is still

continued to attempt to contact officials about these issues even after not receiving a response, in an attempt to exhaust his administrative remedies. *Id.* This missing grievance is not in the record, so the Court has no way to determine its contents besides relying on documents in the record and the parties' testimony at the *Pavey* hearing. The Court previously found Plaintiff's testimony and the supporting documentation, including the 2019 letter to the ARB (which supports Plaintiff's testimony) and various other letters, to be compelling on the issue of exhaustion. Plaintiff testified that at the time of his injury, he was unaware of the proper grievance procedure, so he submitted a combination of official grievance forms, request slips, and letters, all submitted through his door in segregation (Doc. 115, p. 10). Plaintiff demonstrated his desire to exhaust his administrative remedies, so it is just as logical to conclude that had he received a returned grievance form, he would have continued to try to exhaust and appeal that grievance. If the missing-from-the-record grievance was the only evidence related to Plaintiff's exhaustion attempts, then perhaps Plaintiff would not have been successful, but that is not the case in the present matter.

Ultimately the Court remains convinced its analysis and decision on the issue of exhaustion was correct. Exhaustion is an affirmative defense and it is the Defendant who bears the burden of demonstrating that Plaintiff has failed to exhaust. The Court does not believe it overlooked or misunderstood any of Defendants' arguments, but nevertheless assures the parties it has reviewed and analyzed all arguments for and against summary

---

unclear from the record if this is the duplicate grievance mentioned in Plaintiff's cumulative counseling summary or a separate missing grievance.

judgment. Defendants have failed to carry their burden. Accordingly, Defendants' motion is **DENIED**.

    **IT IS SO ORDERED.**

    **DATED:   October 16, 2020**

                                             **/s/ Mark A. Beatty**
                                             **MARK A. BEATTY**
                                             **United States Magistrate Judge**